UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WISCONSIN

---

In re:                                                                                          Case Number: 13-10279-7

EARL J. OLIVER and
DENISE L. OLIVER,

                Debtors.

---

# DECISION

## BACKGROUND

The Debtors, Earl and Denise Oliver, filed a Chapter 7 petition on January 24, 2013. Mr. Oliver is the owner of a one-third undivided interest in eighty acres of real estate. The Debtors reside on the parcel and, at one time, rented sixty-six acres of the parcel to a third party.

The Debtors asserted an exemption to the entirety of the property under 11 U.S.C. § 522(d)(1). Following an objection by the Trustee, the Debtors amended their schedules to assert an exemption in the property pursuant to Wis. Stat. § 815.20. The Trustee filed an objection to the amended claim of exemptions. The parties agreed the maximum acreage that may be claimed exempt was forty acres but disagreed on the acreage that could be considered reasonably necessary for the use of the dwelling as a home as required by the Wisconsin homestead exemption statute.

At the conclusion of the final hearing on the exemption objection, the parties were directed to provide the Court the minimum acreage permitted for a

residential site in the township where the property was located. The parties advised the Court the minimum acreage for a home site in the township was 1-1/2 acres. They then requested time to engage in settlement discussions.

The parties reached a settlement with respect to the Trustee's objection. They stipulated the Debtors would pay the sum of $40,000.00 to the Trustee in "full settlement of all claims the Trustee may have against the Debtors' 80 acres of real estate . . . ." The Debtors agreed to make payment within ten days of the date the Court approved the stipulation. The stipulation also provided the Debtors were not entitled to assert any exemption in the settlement funds paid to the Trustee. The Trustee agreed to withdraw his objection and abandon the estate's interest in the real estate after the Debtors' payment cleared. The stipulation was approved on January 7, 2014. On or about January 29, 2014, the Debtors made the payment to the Trustee.

To fund the settlement, the Debtors sold approximately twenty acres of the real estate to a third party for $45,000.00. Then, on February 24, 2014, the Debtors filed Proof of Claim 6-1[1] (the "Claim").[2] The Claim seeks recovery of $15,006.03 related to the sale of the real estate. Of this amount, $4,509.69 is for delinquent real estate taxes on the entire eighty acres, $4,078.80 constitutes attorney's fees incurred by the Debtors in the course of litigating

---

[1] The Claim was filed by the Debtors and signed by their attorney, but listed "Trustee" as the creditor.

[2] The claims bar date in this case was January 6, 2014.

the Trustee's objections and selling the acreage, and the balance is amounts expended to satisfy judgment liens against the real property.[3] The Trustee has objected to the Claim.

## ANALYSIS

### Claims Bar Date

The timing of the Debtors' Claim is problematic. On October 4, 2013, a "Notice Fixing Last Date to File Claims" was issued by the clerk's office that set January 6, 2014, as the last date to file claims. The Claim was not filed until February 24, 2014. The Debtors did not seek an extension of the bar date. The real estate taxes included in the Claim are all pre-petition delinquencies. Similarly, all of the judgments were pre-petition debts.[4] The majority of the fees were also incurred prior to the bar date. No claims for the real estate taxes, judgment amounts, or fees were filed by the bar date.

Section 502 provides that claims are "deemed allowed" in the absence of any objection. Claims in Chapter 7 cases that are not timely filed are not automatically disallowed—they are disallowed only upon an objection. 11 U.S.C. § 502(b)(9). Specifically, section 502(b)(9) provides that upon objection,

---

[3] This includes liens on both the portion of the real estate that was sold as well as the portion of the real estate retained by the Debtors. The Debtors concede the Claim is overstated by $5,042.54 because the amount of the judgment liens actually paid totaled only $1,375.00.

[4] Two of the judgments were satisfied without payment. Although a similar procedure was available for the third judgment as well, the Debtors elected to make a partial payment on this judgment. The Debtors did not list or notify this third creditor in their bankruptcy.

the court shall disallow a claim to the extent the proof of claim is not timely filed, except to the extent tardily filed as permitted under section 726(a)(1),[5] (a)(2),[6] or (a)(3).[7] *See, e.g., In re Simpkins*, 448 B.R. 84, 88 (Bankr. N.D. Ga. 2011) (untimely claims not disallowed unless objections are received); *In re Feldman*, 261 B.R. 568, 575 (Bankr. E.D.N.Y. 2001). None of the exceptions are applicable in this case.

Although the deadline for filing a proof of claim may be extended "for cause shown" pursuant to Bankruptcy Rule 9006(b)(1), extensions may not be sought after the expiration of the original bar date. *See* Fed. R. Bankr. P. 3002(c), 9006(b)(1); *In re Simpkins*, 448 B.R. at 88-89 (citing *In re Brooks*, 370 B.R. 194 (Bankr. C.D. Ill. 2007); *In re Damiano*, No. 04-98349-jem, 2005 WL 6952387 (Bankr. N.D. Ga. Dec. 14, 2005)); *In re Feldman*, 261 B.R. at 575 (by express terms of Rule 9006(b)(1), court is not permitted to enlarge the time period to file a proof of claim after expiration of the claims bar date in Chapter 7) (citing *In re Elmont Elec. Co.*, 206 B.R. 41, 43 (Bankr. E.D.N.Y. 1997)). Therefore, even if the Debtors had filed a motion to extend the time to file a

---

[5] This subsection refers to tardily filed priority claims and permits distributions on account of tardily filed claims that are filed on or before the earlier of ten days after the mailing to creditors of the summary of the trustee's final report, or the date on which the trustee commences final distribution under this section.

[6] This subsection refers to tardily filed general unsecured claims by creditors who did not have notice or actual knowledge of the bankruptcy and who file a proof of claim in time to permit payment of the claim.

[7] This subsection refers to tardily filed general unsecured claims other than those referred to in section 726(a)(2)(c).

proof of claim, it would have been denied if it was filed after the claims bar date. As a result, the Debtors' Claim could be disallowed solely on the basis that it was filed late and no extension of time was sought. *See, e.g.*, *In re Wright*, 300 B.R. 453, 459-60 (Bankr. N.D. Ill. 2003) (bankruptcy court lacks authority to allow tardily filed proof of claim where no extension of time sought).

### Real Estate Taxes

Substantive considerations also support disallowing the Debtors' Claim. The Debtors assert the portion of the Claim representing real estate taxes is entitled to priority pursuant to 11 U.S.C. § 507(a)(8). Section 507(a)(8) provides for priority payment of the allowed, unsecured claims of governmental units for a variety of different unpaid taxes. Claims under section 507(a)(8) are afforded preferred treatment because, among other things, taxing authorities are involuntary creditors.

In a Chapter 7 case, section 726(a) establishes the order and priority of the distribution of property of the bankruptcy estate. In general terms, it provides that property of the estate is first distributed to the priority claims defined under section 507 of the Code, followed by payment to allowed unsecured claims. *See* 11 U.S.C. §§ 726(a)(1)-(3). Thereafter, payment is made to allowed claims for fines, penalties, and forfeitures, and then to interest on any claims. *See id.* at §§ 726(a)(4)-(5). The debtor stands last in line and receives payment only after all other creditors have been paid. *Id.* at § 726(a)(6).

The Debtors contend they "paid" real estate taxes that would have been paid if it had been the Trustee who sold the property and, therefore, the Debtors should be entitled to a claim for the real estate taxes. The first flaw in this assertion is that the taxes were paid from closing proceeds and after such closing expense there remained the full $40,000.00 paid to the Trustee. Thus, if the sale had been by the Trustee, the result would have been that the estate would have received and had available for distribution the full $40,000.00 without reduction by any claim for real estate taxes in the case. The second flaw is the assumption that, in the absence of a settlement, the Trustee would have limited a sale to twenty acres and would not have potentially realized far more than $40,000.00 net. Finally, this contention presumes the sole beneficiary of the payment of real estate taxes was the bankruptcy estate. In fact, the Debtors and their co-owners retain sixty acres upon which all of the 2010, 2011, and 2012 real estate taxes have been paid in full, so they benefitted personally from the payment of the taxes. By seeking payment for the Debtors ahead of other creditors, the claim proposes an impermissible inversion of the order of priority set forth in section 726(a). *See, e.g.*, *In re Lettieri*, 506 B.R. 208, 210-11 (Bankr. W.D.N.Y. 2014); *In re Daniel*, No. 10-31550, 2012 WL 4849965, at *3 (Bankr. M.D. Ala. Oct. 11, 2012); *In re Sarnovsky*, 436 B.R. 461, 465 (Bankr. N.D. Ohio 2010).

Besides violating the statutory order of priority, there are at least two additional problems with the Debtors' claim for the real estate taxes. First, the

6

language of section 507(a)(8) is clear that it affords priority for the allowed, unsecured claims of "governmental units." The term "governmental unit" is defined broadly in the Code to include: "United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States . . . a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government." 11 U.S.C. § 101(27). The Debtors, as private individuals, clearly do not meet the description of a governmental unit. *In re Sarnovsky*, 436 B.R. at 465. As such, they cannot hold a priority claim under section 507(a)(8) unless, perhaps, it was assigned to them. *Id.* There is no evidence of an assignment.

Second, to qualify under section 507(a)(8)(B), the tax must satisfy three requirements: 1) it must be a "property tax," 2) incurred before the commencement of the case, and 3) it must have been last payable without penalty after one year before the bankruptcy was filed. The taxes included in the claim satisfy the first two requirements; the taxes are a property tax and the amounts are for pre-petition periods. However, approximately $2,740.48 of the taxes, constituting taxes owed for 2010 and 2011, were last payable without penalty more than one year before the case began. Moreover, to qualify under this section, the taxes must be unsecured claims. These were not; they

were secured tax claims. Accordingly, they would not be entitled to priority even if the Claim was otherwise valid.[8]

Furthermore, the Debtors are ineligible to receive the priority status of the claim of a taxing authority. *Id.*; *In re Daniel*, 2012 WL 4849965, at *3 (citing *In re Barnes*, 304 B.R. 489, 491 (Bankr. N.D. Ala. 2004)); *In re Lettieri*, 506 B.R. at 210-11 (Bankr. W.D.N.Y. 2014). As an initial matter, there is no evidence or suggestion that the Debtors were assigned Jackson County's tax claim. Regardless, even if they had been assigned the claim, the Code is clear that they cannot assume the taxing authority's priority in the distribution scheme, whether or not they actually paid the tax. 11 U.S.C. 507(d); *In re Daniel*, 2012 WL 4849965, at *3; *In re Barnes*, 304 B.R. at 491 (citing *Western Surety Co. v. Waite (In re Waite)*, 698 F.2d 1177 (11th Cir. 1983)). Section 507(d) provides that "[a]n entity that is subrogated to the rights of a holder of a claim of a kind specified in subsection . . . (a)(8) . . . is not subrogated to the right of the holder of such claim to priority under such subsection." Thus, even if the Debtors had taken an assignment of a proof of claim filed by the taxing authority, they would not succeed to the taxing authority's priority position. *In re Daniel*, 2012 WL 4849965, at *3; *In re Barnes*, 304 B.R. at 491 (citing *In re Waite*, 698 F. 2d 1177 (11th Cir. 1983)). The Debtors, through their Claim, explicitly seek to step

---

[8] The Court also notes that although the Debtors retained a portion of the real estate, they paid delinquent taxes on the entire parcel. The Claim seeks reimbursement from their bankruptcy estate for the full amount of taxes paid, not simply the amount of taxes on the portion of the parcel that was sold.

into the shoes of the Jackson County taxing authority and recoup the real estate taxes from the estate ahead of all inferior classes of creditors. As a result, for all of the foregoing reasons, the Debtors' priority claim for real estate taxes should be disallowed.

### Judgments

The portion of the Claim related to satisfaction of judgments is overstated by $5,042.54 and therefore not allowable. The remaining amount of $1,375.00 is also subject to disallowance. First, while the judgment is a lien on real estate, the Debtors could have filed and obtained a satisfaction "due to bankruptcy" as they did with the other judgments. They elected not to do so. Second, no claim was filed on account of this pre-petition claim by the claims bar date. Finally, this amount was paid from the gross sale proceeds and would not, therefore, have reduced the amount paid to the Trustee or created any claim in the estate if the Trustee had been the seller.

### Claim for Attorney's Fees

The final portion of the Claim is for attorney's fees incurred by the Debtors. The fees represent 24.4 hours of attorney time at $165 per hour. Of the time expended, only 2.9 hours represents time or services performed after a settlement was reached with the Trustee. The balance of the time was incurred litigating the exemption objection, amending Schedule C, or otherwise in activities related to settlement negotiations. Those services were provided

solely for the benefit of the Debtors and not in connection with the sale of the real estate.

The estate did not sell real estate. The Trustee did not retain Attorney Ritland as counsel for the estate pursuant to 11 U.S.C. § 327, which is a prerequisite to receiving compensation from the estate under section 330(a)(1). *See, e.g., In re Griffin,* 313 B.R. 757, 760-61 (Bankr. N.D. Ill. 2004) (citing *Lamie v. U.S. Tr.,* 540 U.S. 526, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004)).

Pursuant to section 701, upon the issuance of the order for relief in a Chapter 7 case, a panel trustee is appointed by the U.S. Trustee. 11 U.S.C. § 701(a). The trustee is charged with, among other things, collecting and reducing to money the property of the estate, being accountable for all property received, investigating the financial affairs of the debtor, and, if advisable, opposing the discharge of the debtor. 11 U.S.C. § 704(a).

In the course of administering these duties, however, the trustee may hire the assistance of counsel. Section 327(a)(1) provides that "the trustee, with the court's approval, may employ one or more attorneys . . . to represent or assist the trustee in carrying out the trustee's duties under this title." Likewise, section 327(e) provides that "[t]he trustee, with the court's approval, may employ, for a specified special purpose . . . an attorney that has represented the debtor, if [it is] in the best interest of the estate . . . ." Pursuant to section 330(a), the court may award reasonable compensation to an attorney hired pursuant to section 327 for actual, necessary services and expenses.

Unlike in a Chapter 11 case, however, debtors in Chapter 7 cases do not assume the powers and duties of the trustee. *See, e.g.*, *In re Griffin*, 313 B.R. at 761. Therefore, to receive compensation pursuant to section 330, Mr. Ritland would have had to be hired by the trustee pursuant to section 327, and his employment would have had to be approved by this Court. The trustee clearly never sought to hire Mr. Ritland to represent the estate, and this Court never approved his representation of the estate. Accordingly, he was never employed pursuant to section 327, so he is not entitled to compensation from the estate pursuant to section 330. *See, e.g.*, *In re Griffin*, 313 B.R. at 761.

Settlement

The Debtors undertook a settlement that permitted them to retain the entire eighty-acre parcel free of the claims of the Trustee and the estate. The only conditions articulated in the settlement were that 1) the Debtors pay the settlement amount within a specified period, 2) the Trustee release his claims to the property by dismissing or withdrawing his objection to exemptions, and 3) the Court approve the settlement. The settlement did not require a sale of any real estate or specify the source of funds to be used by the Debtors. The Debtors made a voluntary decision to sell part of the real estate. The Debtors benefitted from the sale because real estate taxes and the judgment liens burdened the portion of the real estate they retained after the sale. Further, by settling with the Trustee and selling the real estate, the Debtors avoided the risk that the Trustee's objection to their claim of exemptions would have been

sustained as to a significantly larger portion of the real estate than the parcel they ultimately sold.

### The Debtors' Eligibility to File a Claim

More fundamentally, however, the Debtors are ineligible to file a proof of claim on their own behalf in their bankruptcy case. The Debtors do not meet the definition of "creditor" set forth in the Code. In relevant part, the Code provides that a creditor is an "entity that has a claim against the debtor . . . ." 11 U.S.C. § 101(10). "Claim," in turn, is defined as a "right to payment," 11 U.S.C. § 101(5)(A), which has been interpreted by the Supreme Court to mean, simply, an enforceable obligation. *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 559, 110 S. Ct. 2126, 2131, 109 L. Ed. 2d. 588 (1990). A creditor is therefore an entity that holds an enforceable obligation against the debtor. *See In re Sarnovsky*, 436 B.R. at 465. Moreover, only a creditor or an indenture trustee may file a proof of claim. 11 U.S.C. § 501(a); *In re Sarnovsky*, 436 B.R. at 465.

Although a debtor may, in some instances, file a claim *on behalf of* a creditor, a debtor may not, in his or her own capacity, assert a claim against himself or herself. *Id.*; *In re Daniel*, 2012 WL 4849965, at *3; *In re Lettieri*, 506 B.R. at 210-11. As a result, the Code offers the Debtors no basis on which to file an allowable proof of claim.[9] The Debtors simply cannot owe a debt to

---

[9] As noted above, the creditor named in the Claim is the "Trustee." Certainly if the Trustee intended to file a claim he would have done so, and, accordingly, for the
(continued...)

themselves—"it is a legal oxymoron." *In re Daniel*, 2012 WL 4849965, at *3. As such, the Claim should be disallowed in its entirety. *Accord In re Lettieri*, 506 B.R. at 210-11; *In re Daniel,* 2012 WL 4849965, at *3; *In re Sarnovsky*, 436 B.R. at 465.

## CONCLUSION

For these reasons, the claim objection is sustained, and the Debtors' Claim 6-1 is disallowed in its entirety.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: June 10, 2014

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge

---

[9](...continued)
purpose of this decision the Court will presume that it is the Debtors who, in fact, seek to assert a claim.